JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation,<br><br>Plaintiffs,<br>v.<br><br>AMREP MANUFACTURING COMPANY, LLC, a Limited Liability Company; WASTEQUIP MANUFACTURING COMPANY, LLC, a Limited Liability Company; and REXFORD INDUSTRIAL REALTY, LP, a Limited Partnership,<br><br>Defendants. | Case No.: 8:25-cv-00998-JVS(DFMx)<br><br>**CONSENT DECREE [31]** |

# CONSENT DECREE

**WHEREAS,** Orange County Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** the mission of Orange County Coastkeeper is to protect swimmable, drinkable, fishable water and promote watershed resilience throughout Orange County;

**WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper (collectively, "Waterkeeper");

**WHEREAS**, Wastequip Manufacturing company LLC ("Wastequip") is identified as the Owner/Operator of a facility at 1555 S. Cucamonga Ave, Ontario, CA 91761 (the "Facility");

**WHEREAS**, the Facility's site name is Amrep Manufacturing Company LLC ("Amrep");

**WHEREAS,** Amrep conducts industrial operations on the Facility site;

**WHEREAS**, Rexford Industrial - 1555 Cucamonga, LLC ("Rexford") owns the land upon which the Facility operates;

**WHEREAS**, the Facility is in the business of refuse vehicle manufacturing;

**WHEREAS**, industrial activities occurring at the Facility include upfitting chassis with refuse collection bodies;

**WHEREAS,** the Facility is categorized under Standard Industrial Classification ("SIC") Code 3713, truck and bus bodies;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Plaintiff alleges that the operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on February 25, 2025, Waterkeeper sent a notice of intent to file suit ("60-Day Notice") to Amrep, Wastequip, Rexford, their registered agents for service of process, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

**WHEREAS**, on May 12, 2025, Waterkeeper filed a complaint against Amrep, Wastequip, and Rexford (mistakenly identified as Rexford Industrial Realty, LP) (collectively, "Defendants") in the Central District of California, Civil Case No. 8:25-cv-00998 (the "Complaint");

**WHEREAS**, Plaintiffs' Complaint alleged violations of the General Permit and the Clean Water Act for the Facility's discharges of pollutants into storm drains and surface waters, including Cucamonga Creek, which discharges to the Santa Ana River, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Waterkeeper and Defendants (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendants (to the extent applicable to each Defendant) agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review. Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return

receipts, or upon the date that the Federal Agencies provide a "no objection" letter, whichever is earlier (the "Agency Review Period").

9. Court Notice. Waterkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the Agency Review Period.

10. Entry of Consent Decree. Promptly following the expiration of the Agency Review Period, Waterkeeper shall submit the Consent Decree to the Court for entry.

**B. DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Treatment Technology.

c. "BMPs" means Best Management Practices.

d. "Advanced Treatment" means a stormwater treatment system that includes both mechanical filtration and absorptive media tank-based filtration, designed in accordance with General Permit Section X.H.6.

e. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g. "Discharge Point" means each outfall and discharge location designated in the SWPPP for the Facility.

h. "Wet Weather Season" means October 1 of any given year through March 31 of the following year at the location of the Facility .

i. "Forecasted Rain Event" means a storm event with a greater than 25% change of precipitation over 0.1 inch at the location of the Facility.

j. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

k. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

l. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

m. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

n. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p. "SWPPP" means a Storm Water Pollution Prevention Plan.

q. "Term" means the period between the Effective Date and the Termination Date.

r. "Termination Date" means the latest of:

i. Three (3) years from the Effective Date, unless there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree;

ii. If there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree, the Consent Decree will terminate within seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute

Resolution procedure that the dispute has been fully resolved, or (2) an order of the Court resolving the dispute;

iii. Notwithstanding the above, if the Regional Board approves a Notice of Termination submitted for the Facility pursuant to Section 2.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for the Facility, or (2) seven (7) calendar days from Amrep's completion of all payments required by this Consent Decree.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. Non-Storm Water Discharge Prohibition: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. Current and Additional Best Management Practices: In addition to maintaining the current BMPs described in the Facility's SWPPP, Amrep shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT. Amrep shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14. Structural and Non-Structural BMPs for the Facility: Within thirty (30) days of the Entry Date, unless otherwise specified, Amrep shall develop and implement the following BMPs at the Facility and incorporate them in Amrep's SWPPP:

a. Acquire a vacuum sweeper equipped with a HEPA filter, as specified by the U.S. Department of Energy, and use it to sweep all accessible

portions of the entire yard weekly during Wet Weather Season, monthly during the dry season, and 48 hours before any Forecasted Rain Event;

b. Manually sweep all areas inaccessible by the mechanical sweeper on the same schedule identified in Paragraph 14.a above and mechanically sweep the area immediately when movement of materials or equipment renders them accessible;

c. Repair structurally compromised pavement prior to the 2026-2027 Wet Weather Season; each year thereafter, perform an evaluation of site surfaces and fill or repair as needed prior to the start of each Wet Weather Season.

d. Paint or coat all accessible galvanized surfaces exposed to stormwater within ninety (90) days of the Effective Date.

15. Advanced BMPs: Within 120 days of the Entry Date, Amrep shall prepare a hydrology report and conceptual treatment proposal ("Report"). This Report shall establish:

a. Treatment rates for treating the runoff generated from the 85th percentile Design Storm as defined in Section X.H.6 of the Permit.

b. A conceptual plan for an Advanced Treatment System capable of removing from storm water the pollutants identified in Table 1 of this Consent Decree for all storm water flows exposed to industrial areas;

c. A description of the proposed treatment works based on bench-scale testing, including the results of the bench-scale testing, the media that have been selected on that basis, and the treatment units proposed for install.

16. Plaintiffs shall have 30 days to review and provide written comments, after which Amrep shall have 30 days to consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. If

Plaintiffs and Amrep cannot reach agreement on the proposed revisions, they shall have 15 days to engage in a good-faith meet-and-confer discussion to resolve any disagreement.

17. The treatment system shall be implemented on the following schedule:

a. If the plan requires permits from any federal, state, or local agency, Amrep shall submit permit applications within 60 days of Waterkeeper's final approval of the Report. Nothing in this Consent Decree shall prevent Amrep from beginning the permitting process earlier so long as it is consistent with the agreed-upon components of the plan.

b. Amrep shall complete construction within 180 days of receipt of all necessary permits, or if permits are not required, within 180 days of Waterkeeper's final approval of the Report.

18. Reporting: Within fourteen (14) days of completion of the BMPs identified in Paragraphs 14-17, Amrep will provide Waterkeeper with written confirmation of completion, including photographs of structural BMPs.

19. Non-Interference: During the Term of this Consent Decree, Rexford agrees to refrain from any action that would substantially interfere with, prevent, frustrate, penalize, or otherwise hinder or impede Amrep in its execution of its obligations as enumerated herein.

**B. SAMPLING AT THE FACILITY**

20. Frequency: During the Term, Amrep shall collect samples of storm water discharge from each Discharge Point(s) during no fewer than four (4) Qualifying Storm Events ("QSEs") per Reporting Year, provided four (4) QSEs occur. Amrep shall sample at least two (2) QSEs during each half of the Reporting Year. If Amrep is unable to collect samples from two (2) QSEs during the first half of the reporting year, it shall make every effort to collect all four (4) samples in the second half of the reporting year.

21. Documentation. To document the storm water discharge and discharge location, Amrep shall take photographs of the storm water discharge and discharge location

when samples are collected (the "Sampling Photographs"). Amrep shall maintain a recording rain gauge capable of recording rainfall to 0.1 inches. Amrep shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Waterkeeper upon a request for documentation made pursuant to Paragraph 31.

22. Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

23. Laboratory and Holding Time: Except for pH samples, Amrep shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions. During the Term, Amrep shall exclusively use a calibrated portable instrument for measuring pH in accordance with the manufacturer's instructions and shall not use wide range litmus pH paper or other equivalent.

24. Detection Limit: Amrep shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

25. Reporting: Amrep shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to Waterkeeper within thirty (30) days of receiving the laboratory report with the results.

**C. REDUCTION OF POLLUTANTS IN DISCHARGES**

26. Table 1 Numeric Limits: Amrep shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| **Analytes** | **Values** | **Source of Limit** |
|---|---|---|
| pH | 6.5 - 8.5 | Basin Plan |
| Zinc (Zn) | 0.26 mg/L | Permit NAL |
| Total Suspended Solids (TSS) | 100 mg/L | Permit NAL |
| Aluminum (Al) | 0.75 mg/L | Permit NAL |
| Iron (Fe) | 1 mg/L | Permit NAL |
| Copper (Cu) | 0.0332 mg/L | Permit NAL |
| Oil and Grease (O&G) | 15 mg/L | Permit NAL |
| Lead (Pb) | 0.262 | Permit NAL |
| Dissolved Cu | 0.013 mg/L | California Toxics Rule (“CTR”) |
| Dissolved Zn | 0.12 mg/L | CTR |

27. Action Plan Trigger: Starting in the 2027-2028 Reporting Year, the action plan requirements set forth in Paragraph 28 shall be triggered upon the occurrences of any of the following events: (1) two exceedances of the Table 1 values for the same pollutant from any outfall during a Reporting Year; (2) three exceedances of any combination of pollutants from any outfall during a Reporting Year; or (3) a Level 1 or Level 2 ERA has been triggered when sampling results indicate a NAL exceedance for a pollutant. *See* Permit Section XII.C and D.

28. Action Plan Requirement: As of the Effective Date, and for the remainder of the Term, if Amrep triggers an Action Plan as described in Paragraph 27, Amrep shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility (“Action Plan”). The complete Action Plan shall be submitted to Waterkeeper by July 31 of each year of the Term, as applicable.

a. Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with

Table 1 value(s); and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than October 1 following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within fourteen (14) days of each of the BMPs set forth in the Action Plan being implemented, Amrep shall confirm to Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b. Action Plan Review: Waterkeeper shall have thirty (30) days upon receipt of Amrep's complete Action Plan to provide Amrep with comments. Within fourteen (14) days of receiving Waterkeeper's proposed revisions to an Action Plan, Amrep shall consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

c. Amrep shall revise the Facility's SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Amrep shall notify Waterkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Waterkeeper for review and comment.

d. Action Plan Payments: Amrep shall pay Five Thousand Dollars ($5,000) each time an Action Plan is submitted to Waterkeeper at the

same time that the Action Plan is submitted. Payments shall be made to "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree by Amrep.

**D. VISUAL OBSERVATIONS**

29. Storm Water Discharge Observations: During the Term, Amrep's appropriately trained staff shall conduct visual observations during each QSE that is sampled in accordance with Section XI.A.2 of the General Permit.

30. Monthly Visual Observations: During the Term, Amrep's appropriately trained staff shall conduct monthly non-storm water visual observations in accordance with Section XI.A.1 of the General Permit.

**E. MAINTAINING RECORDS AND RECORD REQUESTS**

31. Amrep shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree, including, but not limited to Paragraphs 14, 15, 29, and 30. Waterkeeper can request a copy of these records in writing, and Amrep shall provide Waterkeeper with a copy of such requested records within fourteen (14) days of receipt of a written request from Waterkeeper for those records.

**F. EMPLOYEE TRAINING**

32. Within thirty (30) days of the Entry Date, Amrep shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of trained employees working at the Facility to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) such Designated Employees are properly trained to perform the required activities to maintain compliance with the General Permit, the Facility's SWPPP, and this Consent Decree; and (3) all full-time regular (non-temporary) non-clerical employees at the Facility

(hereinafter referenced as "ALL Employees") receive basic information regarding housekeeping and storm water best management practices (the "Training Program").

33. Designated Employee Training shall at a minimum, include:

a. Non-Storm Water Discharges. Designated Employees shall be trained on the General Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

b. The SWPPP and BMPs. All Designated Employees shall be trained on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility. Designated Employees shall be trained on proper operational procedures and control measures. All training of Designated Employees must include the requirements of the General Permit and this Consent Decree including the additional BMPs outlined in Paragraphs 14 and 15 above.

c. Visual Observation. Amrep shall designate and train an adequate number of Designated Employees to collect storm water samples from each discharge location at the Facility and conduct visual monitoring, as required by this Consent Decree. Such training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

d. Storm Water Sampling. Amrep shall designate an adequate number of Designated Employees to collect storm water samples as required by

this Consent Decree and the General Permit. There shall be no fewer than three Designated Employees. The Training Program shall include training of Designated Employees sufficient to ensure: (i) proper sampling protocols, including chain of custody requirements, are followed at all times and, (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

e. Training Implementation. Training of at least two Designated Employees (hereinafter referenced as "Designated Trainers") shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree and the General Permit. The Designated Trainers and/or the QISP shall provide the training set forth in Paragraphs 32 and 33.

f. Language. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to: (i) staff comprehension of the Training Program and/or, (ii) compliance with this Consent Decree and the General Permit, Amrep shall provide translation services at all training sessions and translation of all training materials.

g. Training Program Frequency – Designated Employees. The Training Program shall be repeated annually or more frequently as necessary to ensure all Designated Employees are familiar with the requirements of this Consent Decree and the General Permit. Designated Employees should, in any event, receive training prior to assuming responsibilities under the General Permit or this Consent Decree.

34. All Employee Training Program. ALL Employees shall receive basic training and information regarding housekeeping and storm water best management practices, which may be performed by a Designated Trainer or a QISP.

a. Training Program Frequency – ALL Employees. ALL Employees who have not received training shall receive initial training to ensure they receive enough information regarding storm water housekeeping and best practices to comply with this Consent Decree and the General Permit. ALL Employees who are new shall receive this training within one year of hiring.

35. Training Records. Amrep shall maintain training records to document compliance with this section, including sign-in sheets documenting which employees were trained, and shall provide Waterkeeper with a copy of such records if requested in accordance with Paragraph 31.

**G. STORM WATER POLLUTION PREVENTION PLAN**

36. SWPPP. Within thirty (30) days of the Entry Date, Amrep shall amend the Facility's SWPPP to incorporate the requirements of the General Permit and this Consent Decree.

37. Revising the SWPPP. Amrep shall revise the Facility's SWPPP if there are any significant changes in the Facility's operations, including but not limited to changes to storm water Discharge Point(s) or significant changes/additions to the BMPs at the Facility, within thirty (30) days of the occurrence of any of the above-listed events.

38. Commenting on Revised SWPPPs. Amrep shall submit each revised SWPPP to Waterkeeper for review and comment within thirty (30) days of its completion. Waterkeeper shall provide comments, if any, to Amrep within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Waterkeeper's comments on the SWPPP, Amrep shall accept and incorporate Waterkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Amrep's failure to incorporate Waterkeeper's

comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**H. COMPLIANCE MONITORING AND REPORTING**

39. Waterkeeper may conduct up to two (2) site inspections ("Site Inspection") per Reporting Year for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Amrep's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Waterkeeper's request. Waterkeeper shall not unreasonably request, and Amrep shall not unreasonably deny, the additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Amrep with at least forty-eight (48) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Waterkeeper shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 65. During the wet weather inspection, Waterkeeper may request that Amrep collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge Point(s), to the extent that such discharges are occurring. Amrep shall collect the sample and provide a split sample to Waterkeeper. Waterkeeper's representative(s) may observe the split sample(s) being collected by Amrep's representative. Waterkeeper shall be permitted to take photographs or video recordings during any Site Inspection, subject to reasonable limitations to protect Amrep's proprietary equipment, machinery, processes and trade secrets.

40. <u>Document Provision</u>. During the Term, Amrep shall notify and submit documents to Waterkeeper as follows:

a. Amrep shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or

correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b. Within fourteen (14) business days of receipt by Amrep, Amrep shall send Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Amrep from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Amrep shall mail paper copies or email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

41. Compliance Monitoring. Amrep agrees to partially defray costs associated with Waterkeeper's monitoring of Amrep's compliance with this Consent Decree Sixty-Five Thousand Dollars ($65,000) until the Termination Date. In the event that that this Consent Decree extends beyond the Termination Date, Amrep shall reimburse Waterkeeper an additional Ten Thousand Dollars ($10,000) per year that the Consent Decree remains in effect. Payment shall be made within thirty (30) days of the Entry Date, and on the anniversary of the Entry Date should the term extend beyond three (3) years, as applicable. The payment shall be made via check, made payable to: "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree by Amrep.

## I. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

42. Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around Cucamonga Creek and the Santa Ana River, Amrep agrees to make a payment totaling Sixty Thousand Dollars ($60,000.00) to Rivers and Lands Conservancy

made within thirty (30) days of the Entry Date, payable to Rivers and Lands Conservancy and sent via overnight mail to Rivers and Lands Conservancy, 6876 Indiana Avenue, Suite J-2, Riverside, CA, 92506. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree by Amrep.

43. Waterkeeper's Fees and Costs: Amrep agrees to pay a total of One Hundred and Twenty-Five Thousand Dollars ($125,000.00) to Waterkeeper to reimburse Waterkeeper for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter, within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Amrep shall pay the first half of the fees ($62,500) within thirty (30) days after the Entry Date, and shall pay the remaining half ($62,500) by December 1, 2026. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree by Amrep.

44. Stipulated Payment. In the event that Amrep fails to submit to Waterkeeper any payment, document, report, or communication required by this Consent Decree, Waterkeeper shall provide written notice to the Facility of such missed deadline. The Facility shall have five (5) business days from receipt of such notice to respond to Waterkeeper, and if necessary, cure such delinquency. If the Facility fails to respond and, if necessary, cure such alleged delinquency within five (5) business days of receipt of Waterkeeper's notice, then Amrep shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rivers and Lands Conservancy, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 42. Payment shall be sent via overnight mail to Rivers and Lands Conservancy, 6876 Indiana Avenue, Suite J-2, Riverside, CA, 92506. Amrep agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. DISPUTE RESOLUTION

45. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

46. Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

47. Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 46 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

48. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

49. Waterkeeper's Waiver and Release of Defendants. In consideration of the above, upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its members, officers and directors, release Defendants and each of them, their officers, directors, managers, employees, owners, shareholders, members, parents,

subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised, or which could have been raised, in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

50. Defendants' Waiver and Release of Waterkeeper. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, members, managers, employees, parents, subsidiaries, owners, shareholders, affiliates and each of their successors and assigns, release Waterkeeper, its members, officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

51. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

52. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

53. Authority. Each of the undersigned representatives for Waterkeeper and Defendants each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

54. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in

the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

55. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

56. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

57. Severability. If any provision of this Consent Decree, or the application of any provision to any person or circumstance, is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, that provision shall be deemed severed from this Consent Decree and shall be enforced to the maximum extent permitted by law. The invalidity, illegality, or unenforceability of such provision shall not affect any other provision of this Consent Decree, all of which shall remain in full force and effect. To the extent permitted by law, any invalid, illegal, or unenforceable provision shall be construed, modified, or limited so as to effect as closely as possible the original intent of the Parties while remaining valid and enforceable.

58. Choice of Law. The laws of the United States shall govern this Consent Decree.

59. Diligence: Amrep shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

60. Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

61. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty or ambiguity shall not be construed against any one Party solely on the ground that that Party drafted the Consent Decree or any particular provision thereof.

62. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

63. Assignment. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event Amrep's transferee or assignee ("Assignee") will continue industrial operations at the Facility, Amrep shall notify Waterkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Amrep will provide Waterkeeper with a written assignment and assumption duly executed by Amrep and the Assignee assigning Amrep's obligations under this Consent Decree to the Assignee.

64. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. A Force

Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

65. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Coastkeeper:
Davina Shoumer
Email: davina@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

With copies to:
Sarah Spinuzzi
Email: sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

If to the Facility:
Sarah Abdel-Malak
Email: SAbdelMalak@wastequip.com
Amrep Manufacturing Company, LLC
1555 S. Cucamonga Ave.
Ontario, CA 91761
Phone: (909) 923-0430

With copies to:
Joseph A. Salazar, Jr.
Email: Joe.Salazar@lewisbrisbois.com
Jay C. Patterson
Email: Jay.Patterson@lewisbrisbois.com
LEWIS BRISBOIS
2485 Natomas Park Dr., Suite 450
Sacramento, CA 95833
Phone: (916) 564-5400

Richard Sedory
Email: RSedory@wastequip.com
Wastequip, LLC
6525 Carnegie Blvd., Suite 300
Charlotte, NC 28211
Phone: (980) 987-7602

And

Michael Murav
Email: MMurav@rexfordindustrial.com
11620 Wilshire Boulevard, Suite 1000
Los Angeles, CA 90025
Phone: (424) 256-2119

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

66. If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT:

Dated: 7/13/2026

By: Signed by: Garry Brown
F7C47D1F0E55415...
Garry Brown
Executive Director
Orange County Coastkeeper
Inland Empire Waterkeeper

Dated: 7/14/2026 By: DocuSigned by: Richard Sedory 4689544D817F4D0...
Richard Sedory
General Counsel
Amrep Manufacturing Company, LLC

Dated: 7/14/2026 By: DocuSigned by: Richard Sedory 4689544D817F4D0...
Richard Sedory
General Counsel
Wastequip Manufacturing Company, LLC

Dated: 7/14/2026 By: DocuSigned by: D E Lanzer 0B503F07296B45C...
David Lanzer
General Counsel
Rexford Industrial - 1555 Cucamonga, LLC

APPROVED AS TO FORM:

Dated: 7/14/2026 By: Signed by: Sarah Spinuzzi 8C755CC906874C8...
Sarah Spinuzzi
Attorney for Orange County Coastkeeper

Dated: 7/15/2026 By: Signed by: Jay Patterson 065A55B84FE84AF...
Jay C. Patterson
Attorney for Amrep Manufacturing Company, LLC, Wastequip Manufacturing Company, LLC, and Rexford Industrial - 1555 Cucamonga, LLC

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between Waterkeeper, on the one hand, and Amrep, Wastequip, and Rexford on the other.

Dated: September 01, 2026

Honorable James V. Selna
United States District Judge
Central District of California